UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
2 MONTAUK HIGHWAY LLC and
26-27 COLLEGE POINT BLVD. #2 LLC,

    Plaintiffs,

  -against-

GLOBAL PARTNERS LP and
BP PRODUCTS NORTH AMERICA INC.,

    Defendants.
----------------------------------------------------------X

MEMORANDUM AND ORDER

13-CV-0309

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   NOV 05 2013   ★

LONG ISLAND OFFICE

APPEARANCES:

Law Offices of Robert G. Del Gadio
By: Robert G. Del Gadio, Esq.
90 Merrick Avenue, Suite 510
East Meadow, NY 11554
Attorneys for Plaintiffs

Rosenberg & Estis, P.C.
By: Howard W. Kingsley, Esq.
733 Third Avenue
New York, NY 10017
Attorneys for Defendants

WEXLER, District Judge:

  Plaintiffs 2 Montauk Highway LLC ("2 Montauk Highway") and 26-27 College Point Blvd. #2 LLC ("26-27 College Point Blvd."), (collectively, the "Plaintiffs") bring this action against Global Partners LP ("Global Partners") and BP Products North America Inc. ("BP Products"), (collectively, the "Defendants") for replevin/conversion against each Defendant. Plaintiffs claim ownership of underground storage tanks and pumping equipment at gas station properties, located at 2 Montauk Highway and 26-27 College Point Boulevard which were previously leased and operated by Plaintiffs, and which are currently leased and operated by

Defendants. Defendants move to dismiss pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Rule 12(b), claiming that (1) abstention requires that this Court defer to a litigation involving these same claims currently pending in the Supreme Court of New York County; and (2) plaintiffs failed to join necessary and indispensable parties so the case should be dismissed under Fed.R.Civ.P., Rule 19. Plaintiffs oppose the motion.

## BACKGROUND

The following facts are taken from Plaintiffs' complaint, except where otherwise noted: Plaintiff 2 Montauk Highway operated a gasoline station at 2 Montauk Highway, East Hampton, NY (the "East Hampton site"), while Plaintiff 26-27 College Point Blvd. operated a gasoline station at 26-27 College Point Boulevard, Flushing, New York (the "College Point site").[1] Each site was subleased by each Plaintiff from Getty Petroleum Marketing Inc. ("GPMI") by separate agreements. While not alleged in Plaintiffs' complaint, the sublease agreements are attached to the Defendants' opposition papers, and reflect that the 2 Montauk Highway sublease was effective as of December 1, 2005, and the 26-27 College Point Blvd. sublease was effective on November 17, 2005. See Kingsley Dec., Exhibit ("Ex."), C & D. Both of those subleases were terminated by order of the Bankruptcy Court of the Southern District of New York in the bankruptcy of GPMI, effective April 30, 2012 (the "Bankruptcy Court Order"). Plaintiffs' Complaint ("Pl. Cmplt."), ¶ 7.

Plaintiff 2 Montauk Highway subleased the East Hampton site, and Plaintiff 26-27 College Point subleased the College Point site, from GPMI who leased the property from Getty

---

[1] Robert G. Del Gadio ("Del Gadio") is a principal of both Plaintiffs. Mr. Del Gadio is also the attorney representing both Plaintiffs in this action. See Declaration of Howard W. Kingsley ("Kingsley Dec."), fn. 2.

Properties Corp. ("Getty Properties"), pursuant to a lease between Getty Properties and GPMI (the "Master Lease"). Pl. Cmplt., ¶ 19, 21; see Kingsley Dec., ¶ 15, 18; Ex. B: Master Lease. The thrust of Plaintiffs' complaint here is that in connection with the sublease of the East Hampton site, GPMI transferred to Plaintiff 2 Montauk Highway the underground gasoline storage tanks ("USTs") and the pumps, dispensers and leak detection equipment for the USTs, by bill of sale dated February 2, 2006. See Pl. Cmplt., ¶ 20, Exhibit A. By a similar bill of sale, the USTs and related equipment at the College Point site were transferred by GPMI to Plaintiff 26-27 College Point, also on February 2, 2006. See Pl. Cmplt., ¶ 22, Ex. B.

The bills of sale are from GPMI as Transferor to either 2 Montauk Highway or 26-27 College Point Boulevard[2] as Transferee, stating that in consideration of $10.00, GPMI "hereby assigns, transfers and sets over unto ... Transferee, its successors and assigns,

> all of Transferor's right, title and interest in and to the furniture, furnishings, equipment, fixtures, trade equipment, pumps, underground tanks, whether in use or not in use, above graound tanks, piping, witing, monitoring devices, supplies, investory, books and records and all other personal property located on certain real property described in Exhibit A.
>
> TO HAVE AND TO HOLD the same unto the said Transferee, its successors and assigns forever, without covenant, except that Transferor does covenant and agree with the Transferee that said Personalty is free of all liens.

See Pl. Cmplt., Ex. A & B.

As discussed more fully below, Defendants dispute that Plaintiffs have any ownership rights in the USTs and related equipment. Defendants claim that when the Master Lease and thus the subleases were terminated by order of the Bankruptcy Court, ownership of the property

---

[2]The language in both bills of sale is identical, except where defining either 2 Montauk Highway LLC or 26-27 College Point Boulevard #2 LLC as the respective transferees.

described in the bills of sale reverted automatically back to Getty Properties. Amongst other things, Defendants point to language in the Master Lease that the subleases "shall automatically terminate upon any termination of this Restated[3] Lease," and that "[u]pon the Termination Date of this Restated Lease ... all Tenant improvements and in service USTs constituting part of the Premises...shall...become Landlord's property." See Kingsley Dec., ¶ 18-30; Ex. B: Consolidated, Amended and Restated Master Lease, Articles 16.3 and 19.

Following the termination of Plaintiffs' subleases at the East Hampton and College Point sites, and the removal of Plaintiffs from those sites as more fully described below, Getty Properties leased the East Hampton site to Global Partners and the College Point site to BP Products. Pl. Cmplt., ¶ 23-24. Global Partners and BP Products are the sole defendants in this action.

1. The State Court Action

As noted above, the Bankruptcy Court Order terminated the Master Lease, and thus the subleases, effective as of April 30, 2012. On May 4, 2012, counsel for GPMI demanded that each of the subtenants ("Subtenants" or "Subtenant defendants") vacate to permit GPMI/debotor to comply with Bankruptcy Court Order. On May 22, 2012, Getty Properties and Gettymart, Inc.[4] ("Gettymart"), as the landlord for those properties (collectively, the "Landlord"), brought an action in New York Supreme Court, New York County as to those non-vacating Subtenants, seeking ejectment, use and occupancy against each of the twenty Subtenants, indemnification

---

[3]It appears that the Restated and Master Lease are the same document.

[4]Both Getty Properties and Gettymart have their primary place of business in New York. See Kingsley Dec., ¶ 4.

-4-

from the Subtenants, and claiming breach of personal guaranty against Robert Del Gadio ("Del Gadio") and Frank Mascolo ("Mascolo").[5] See Kingsley Dec., Ex. I: Verified Complaint, Supreme Court of the State of New York, New York County, Index No. 651762/2012 (the "State Action"). The Plaintiffs in this action are two of the Subtenant defendants in the State Action.

In their Answer and Counterclaims in the State Action, Subtenants 2 Montauk Highway and 26-27 College Point Blvd. asserted that giving Landlord possession of the properties would deprive them the value of the improvements and renovations they performed at each site, and that Landlord was tortiously interfering with their contracts with the gas station operators, and engaging in unfair competition by profiting from their improvements without reimbursing for them.

According to Landlord's counsel, the State Action has been "heavily and intensely litigated" and has included, *inter alia,* an order to show cause for a temporary restraining order, a motion to transfer to Nassau County and three appeals to the First Department. See Kingsley Dec., ¶ 48-51; Ex. E, K, M. On August 2, 2012, the court in the State Action entered a judgment awarding possession of the properties to the Landlord, and ordered the defendant Subtenants to pay use and occupancy in the total amount of $443,114.10 ("Judgment"). Kingsley Dec., ¶ 73-78; Ex. V. The court also entered a Supplemental Order and Judgment in July 2012 permitting the defendant Subtenants an opportunity to submit support to their entitlement to any offset of the Judgment as a result of any improvements made. See Kingsley Dec., ¶ 75-78; Ex. U. The parties attempted to settle the case through court-ordered mediation, which failed. Kingsley Dec., ¶ 80-

---

[5] Del Gadio provided personal guarantees in connection with all of the subleases, except for three provided by Mascolo. See Kingsley Dec., Ex. I, ¶ 51-52.

83.

On May 2, 2013, the Appellate Division, First Department affirmed the Supreme Court's Judgment. When the action resumed and following that decision, the state court entered a decision and order ("Order") which granted the Landlord's motion for summary judgment, denied Subtenants' motion for summary judgment, dismissed Subtenants' counterclaims, and granted Landlord's motion for sanctions, sanctioning defense counsel Del Gadio $10,000 for failure to pay the Judgment as directed. See Kingsley Letter, July 16, 2013 (Docket Entry ("DE")), # 17) enclosing "Decision and Order," Getty Properties, et al v. Getty Petroleum Marketing Inc., at al., J. Schweitzer, Index No. 651762/12, June 13, 2013.[6] The Order also denied Subtenants' request pursuant to RPAPL § 601 to reduce the Judgment by the value of improvements made since the court deemed these improvements were made not by defendants, but non-party affiliates. Id., at 11.

2.   The Federal Action

In this action, Plaintiffs (defendants in the State Action) bring claims of "replevin/conversion" against the Defendants Global Partners and BP Products (collectively "Defendants"), who currently operate the East Hampton and College Point sites respectively, seeking a judgment that Plaintiffs are entitled to possession of, and to allow removal or abandonment of, the USTs and related equipment at the premises, or that Plaintiffs have judgment against the Defendants "in an amount that represents the fair and reasonable value of

---

[6]This Order was entered after the parties here fully briefed the current motion, and thus was submitted to this Court by Defendants' counsel following the briefing. In response, Plaintiffs' counsel argues that the Order does not address the claims here and thus should have no bearing on this case. See DE # 17, 18, 19, & 20.

that equipment." Pl. Cmplt., Wherefore clauses, at 6-7.

Defendants[7] move to dismiss,[8] arguing that this Court should abstain from jurisdiction in favor of the State Action. Defendants also argue that Plaintiffs' complaint should be dismissed for failure to join necessary and indispensable parties -- namely, Getty Properties and Gettymart[9] --- as the owners of the real property on which the gas stations and USTs are located. Plaintiffs oppose the motion.

## DISCUSSION

I. <u>Legal Principles</u>

Defendants bring this motion to dismiss on two grounds - abstention, in favor of the New York action, and for failure to join an indispensable party in violation of Fed. R.Civ.P. 19. The Court will first address the joinder issue.

    A. <u>Standards on Rule 19 - Failure to Join Required Parties</u>

Fed.R.Civ.P. 12(b)(7) states that a party may move to dismiss for failure to join a party under Fed.R.Civ.P. 19, which governs the joinder of required parties. Fed.R.Civ.P. Rule 19(a)(1) states that a person subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined if:

    (A) in that person's absence, the court cannot accord

---

[7]Defendants in this action are represented by Rosenberg & Estis, P.C., who represents the Landlord in the State Action. <u>See</u> Kingsley Dec., Ex. P: Transcript of hearing on the temporary restraining order before this Court, February 13, 2013, at 5-6.

[8]Previously, Plaintiffs moved this Court for a temporary restraining order and for a preliminary injunction, both of which were denied. <u>See</u> DE #10, 21.

[9]These parties are the Landlord plaintiffs in the State Action, and shall be referred to herein individually or collectively as "Getty" or "Landlord."

> complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1)(A) and (B).

If a party has been deemed necessary, and if joinder of the party is not feasible, i.e., it would destroy diversity, the "court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed.R.Civ.P. 19(b). The rule outlines the factors the court must consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed.R.Civ.P. 19(b)(1)-(4).

The district court's decision of whether a party is indispensable is reviewed for an abuse of discretion. Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 132 (2d Cir. 2013), citing Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co., 312 F.3d 82, 87 (2d Cir.2002); CP Solutions PTE, Ltd. v. General Electric Co., 553 F.3d 156, 158 (2d Cir. 2009). The Second Circuit has recognized that the district court should take a "flexible approach" to a Rule 19(b)

analysis. See CP Solutions, 553 F.3d at 159, citing Universal Reins., 312 F.3d at 87 (noting "the flexible nature of [the] Rule 19(b) analysis") and Jaser v. N.Y. Prop. Ins. Underwriting Ass'n, 815 F.2d 240, 242 (2d Cir.1987)("[A] court should take a flexible approach when deciding what parties need to be present for a just resolution of the suit."). Yet, "'very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible.'" Universal Reins., 312 F.3d at 87, citing Jaser v. N.Y. Prop. Ins. Underwriting Ass'n, 815 F.2d 240, 242 (2d Cir.1987).

A party cannot be indispensable[10] under Rule 19(b) unless it is a "necessary party" under Rule 19(a). See Jonesfilm v. Lion Gate Intern., 299 F.3d 134, 139 (2d Cir. 2002), citing ConnTech Dev. Co. v. University of Connecticut Educ. Properties, Inc., 102 F.3d 677, 681 (2d Cir. 1996). Fed.R.Civ.P. 19(a) deems a party necessary or "required" if he or she is "one whose participation is so desirable or important that the party must be joined so long as she or he is 'subject to service of process' and joinder 'will not deprive the court of subject-matter jurisdiction.'" Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 131 (2d Cir. 2013), quoting Fed.R.Civ.P. 19(a)(1).

The Second Circuit has restated the Fed.R.Civ.P. 19(b) standards of whether a party is "indispensable" as: "(1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff

---

[10]While the amendment of Rule 19(b) in 2007 dropped use of the term "indispensable" as redundant, there is no substantive difference in the rule as applied before the amendment. See CP Solutions PTE, Ltd. v. General Electric Co., 553 F.3d 156, 159, n. 2 (2d Cir. 2009).

would have an adequate remedy if the court dismissed the suit." Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 133 (2d Cir. 2013), quoting CP Solutions, 553 F.3d at 159.

II. Disposition of the Motion

    A. Dismissal under Fed. R.Civ.P. 19

    1. "Required" under Fed.R.Civ.P.19(a)

The preliminary question is whether Getty Properties and Gettymart are required parties to this action under Rule 19(a). Plaintiffs bring this action solely against the two entities currently operating the premises at 2 Montauk Highway and 26-27 College Point Boulevard respectively. Plaintiffs argue that this is sufficient because the two current operators of the sites – these Defendants – have possession of the USTs and related equipment that Plaintiffs argue rightfully belong to them pursuant to the bills of sale. Thus, their claims of replevin/conversion rightfully lie only as to those parties.[11] On the other hand, Defendants argue that Getty Properties and Gettymart are "required" parties to this action since they are the rightful owners of the USTs and related equipment. They claim this is an ownership dispute that is rightfully between the Plaintiffs and those Getty entities.

---

[11]Plaintiffs' complaint contains two claims, both are styled as "replevin/conversion" as to each of the two sites. Under New York law, a claim for replevin must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right. Batsidis v. Batsidis, 9 A.D.3d 342, 343, 778 N.Y.S.2d 913 (2d Dept. 2004), citing G & S Quality v. Bank of China, 233 A.D.2d 215, 650 N.Y.S.2d 97 (1st Dept. 1996). Similarly, "conversion" occurs when someone assumes or exercises control over personal property belonging to someone else in a way that interferes with that person's right of possession. Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights. Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50, 860 N.E.2d 713, 717 (2006) (citations omitted); see also Shiotani v. Walters, 2012 WL 6621279, *3 (S.D.N.Y. 2012).

The Court notes that the current Defendants in this case are not party to the original sublease nor the bills of sale, and are merely involved as innocent bystanders who happen to operate the premises currently. Determining the issue of ownership requires that Getty Properties and Gettymart be in the case. Thus, it is clear to the Court that it "cannot accord complete relief among the existing parties." See Fed.R.Civ.P., Rule 19(a)(1)(A). While the rule is disjunctive, the Court nevertheless further finds that Getty Properties and Gettymart are also required to be joined under Rule 19(a)(1)(B) because they claim an interest to the subject matter of this action – the USTs and related equipment – and "disposing of the action in [their] absence" would impair their right to protect that interest. If Plaintiffs were successful on their claims, they would be deemed owners of the equipment, which is exactly opposed to Getty Properties and Gettymart's interest. Furthermore, such a result could leave Defendants Global Partners and BP Products "subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations" since should they lose here, it is likely that Getty Properties and/or Gettymart would likely seek additional recovery from them for losing the property to these Plaintiffs. This result is what Rule 19(a)(1)(B) seeks to prevent. Accordingly, Getty Properties and Gettymart are parties required to be joined to this action under Rule 19(a).

2. Indispensable Under Fed.R.Civ.P.19(b)

As previously noted, joinder of Getty Properties and Gettymart - both with primary places of business in New York - would destroy diversity jurisdiction since both Plaintiffs also are residents of New York. See Pl. Cmplt., ¶ 3&4; Kingsley Dec., ¶ 4. Thus, the question here is whether, since joinder is not feasible, the action should proceed with just the existing parties or be dismissed.

As noted above, Rule 19(b) outlines the four factors a court must evaluate in determining this question, restated by the Second Circuit as: "(1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit." Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 133 (2d Cir. 2013), quoting CP Solutions, 553 F.3d at 159. The Court now applies these factors to this case.

a. Prejudice. The first factor is whether a judgment in this action in its current posture would prejudice the parties, or the persons deemed necessary but absent. The inquiry focuses on the Defendants who argue in favor of joinder, as opposed to the plaintiffs who presumably would be willing to bear the prejudice. See CP Solutions PTE, Ltd. v. General Electric Co., 553 F.3d 156, 159 (2d Cir. 2009); citing Universal Reins., 312 F.3d at 88.

The Second Circuit has provided examples of where there is no prejudice. For example, there is no prejudice to proceeding with the absent person if that person shares joint and several liability with other parties in the case. In such an instance, there is no "concern" that the present parties "will be forced to share 'sole responsibility for a liability' that they share with the absent party." See Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co., 312 F.3d 82, 88 (2d Cir.2002), quoting Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968). There is also no prejudice if the interests of the absent persons are "identical" to parties in the action. See Marvel Characters, Inc. v. Kirby, 726 F.3d at 134 (two absent siblings had "identical" legal issue of two present siblings in action as heirs to rights of freelance comic). Prejudice could also be avoided by reducing the judgment by an amount attributed to the absent

party. See Jaser v. New York Property Ins. Underwriting Ass'n, 815 F.2d 240, 243 (2d Cir. 1987).

The issue here is ownership of the USTs and the related equipment. These Defendants will suffer prejudice if forced to defend these claims alone. As noted above, Plaintiffs allege that their ownership rights derive from the bills of sale executed in connection with the Master Lease permitting Plaintiffs to operate these two sites. These bills of sale transferred rights from GPMI to Plaintiffs. The Defendants in this case have no connection to that alleged ownership transfer. There is no evidence that these Defendants were parties to or have any knowledge of the bills of sale, or the Master Lease. Their only connection is that currently operate the premises owned by Getty and thus have possession of the property in dispute. They are strangers to the relationship that created the ownership dispute, and it is prejudicial to force them to defend these claims in Getty's absence.

Similarly, any judgment here would prejudice the required but absent persons, Getty, who claims ownership in the property in question. In the current posture of the lawsuit, Getty cannot defend itself, nor can it rely on these Defendants to defend its interest since these Defendants are wholly disconnected to the lease arrangement between Getty and these Plaintiffs. Any judgment Plaintiffs may obtain on their replevin/conversion claims, which necessarily turns on ownership rights in the property in question, would clearly prejudice the Getty entities, who claim exclusive ownership in the property.

b. <u>Whether prejudice can be alleviated</u>. The second factor analyzes whether that prejudice could be alleviated in some way. The Court is hard-pressed to find any way in which this can be achieved in this case. Plaintiffs' replevin and conversion claims are predicated on a

finding that Plaintiffs have a right to the property in question. Getty also claims to have ownership rights in the same property. There is no feasible way to craft or modify a judgment that finds that Plaintiffs have an ownership interest, and yet does not thus completely eliminate Getty's purported ownership interest.

Nor is it possible to eliminate the prejudice to Defendants of litigating this issue without Getty in the case. Even permitting these Defendants extensive third-party discovery from the Getty entities in an attempt to eliminate the inherent prejudice of defending this claim in Getty's absence, that does not eliminate the prejudice that a judgment in Plaintiffs' favor would cause them, as well as Getty. These Defendants do not have access to the same evidence, facts or defenses necessary to determine proper ownership of the USTs. That these Defendants are represented by the same counsel that defended the Getty Landlords in the State Action does not alleviate the prejudice, since access to the same lawyers does not equate to access to the same evidence. Cf. CP Solutions, 553 F.3d at 160 (same counsel for affiliated GE entities could advocate for absent entity). Nor would the interests of the absent Getty entities be protected by the current Defendants, as might occur, for example, when a corporate parent remains in the case and thus can protect the interests of its affiliate. Cf. CP Solutions, 553 F.3d at 160 (presence of other GE party could champion the interest of the dropped GE party)(citations omitted). Thus, the Court finds no feasible way to alleviate the prejudice of continuing the case in its current posture.

c. Whether Judgment Would be Adequate. This factor of "adequacy refers to the public stake in settling disputes by wholes, whenever possible" and concern for judicial efficiency and avoiding multiple or piecemeal litigation. CP Solutions, 553 F.3d at 160, quoting Republic of

Philippines v. Pimentel, 553 U.S. 851, 870 (2008). No judgment in this case would be "adequate" by this standard, whether in Plaintiffs' or Defendants' favor. Without the presence of Getty Properties and Gettymart in the action to sort out the proper ownership of the USTs, additional litigation is inevitable, thus making any judgment in this case inadequate.

    d. <u>Adequate remedy if dismissed</u>. The final factor is whether the Plaintiffs' would have an adequate remedy if this case were dismissed. The Court finds that Plaintiffs have an adequate remedy in state court. Very importantly, this action is in its early stage of litigation. While there have been motions for a temporary restraining order and a preliminary injunction, the parties have not yet conducted any discovery in this forum so pursuing these claims in state court would not exact any prejudice to any parties. Cf. Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co., 312 F.3d 82, 89 (2d Cir. 2002)("a critical factor" in not dismissing the action is that the case had already proceeded to final judgment)(string citations omitted); CP Solutions, 553 F.3d at 160 (dismissal reversed where parties had engaged in discovery for over two years). Furthermore, this case involves only state law claims, for which a state court can provide a wholly adequate remedy. Indeed, proceeding in state court, with ALL the parties necessary to determine ownership of the USTs and related equipment, is the most appropriate and adequate remedy for this case. Therefore, the Court finds that Getty Properties and Gettymart are indispensable parties, and hereby grants Defendants' motion to dismiss under Fed.R.Civ.P 19(b).

    B.    <u>Abstention</u>

    In light of the Court's ruling that this case be dismissed under Fed.R.Civ.P. 19(b), there is no need to address Defendants' argument that the Court abstain in favor of the State Action. Nevertheless, the Court notes that under the <u>Colorado River</u> doctrine, the federal court may

abstain to conserve federal judicial resources in those "exceptional circumstances" where the existing concurrent state-court litigation could result in a "comprehensive disposition" of the case. Woodford v. Community Action Agency of Greene County, Inc., 239 F.3d 517, 522 (2d Cir. 2001), quoting Colorado River, 424 U.S. at 813 (internal quotations omitted). While the Court finds Defendants' arguments persuasive, it is important to note that in the interim of this motion, the court in the State Action has granted the Landlord plaintiffs' motion for summary judgment, denied the defendant Subtenants' motion for summary judgment and dismissed the Subtenants' counterclaims. This Court is concerned that as such, the advanced posture of the State Action may not be able to provide Plaintiffs here an adequate forum for their replevin/conversion claims, and therefore declines to abstain.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss under Fed.R.Civ.P. 19(b) is granted. The Clerk of the Court is hereby directed to close the file and terminate the case.

SO ORDERED.

                                                             s/ Leonard D. Wexler
                                                             LEONARD D. WEXLER
                                                             UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       November  , 2013